## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| STEVEN JAMES, | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION** |
| | ) | **NO. 1:18-cv-11960-TSH** |
| COLETTE GOGUEN, | ) | |
| Respondent | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

### September 30, 2019

Hennessy, M.J.

Petitioner Steven James has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his state court conviction. (Docket #1). Respondent opposes the motion and has moved for dismissal. (Docket #15). On May 21, 2019, this matter was referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation on the motion to dismiss. (Docket #19).

For the reasons that follow, the undersigned recommends that the motion to dismiss be allowed.

## I.    BACKGROUND

On February 21, 1994, seventeen-year-old James and several of his friends had an altercation with a man outside a sandwich shop. Commonwealth v. James, 427 Mass. 312, 313, 315 (1998). James and his friends began taunting the man, and he fended them off with a baseball bat. Id. Eventually the man fell to the ground. Id. at 313. James picked up the bat and swung it

at the man's head three times, each time with deadly force, crushing his skull and lacerating his brain.  Id.  The victim died of head injuries two days later.  Id. at 313.  James surrendered to police and gave a videotaped confession.  Id. at 314.

Following a jury trial, James was convicted of murder in the first degree by reason of extreme atrocity or cruelty.  Id. at 312-13.  James was sentenced to life in prison with no possibility of parole pursuant to Massachusetts General Laws chapter 265, section 2.[1]  (Docket #17-1 at 57-58).  James filed a direct appeal to the Massachusetts Supreme Judicial Court (the "SJC"), arguing that there was insufficient evidence of extreme atrocity or cruelty, that his videotaped confession should have been suppressed, and that the jury instructions failed to adequately address the impact of his mental impairment from intermittent explosive disorder.  James, 427 Mass. at 313-16.  He also argued that the jury instructions failed to address the relationship between his mental impairment and sudden combat, and that the judge did not properly instruct the jury on manslaughter.  Id. at 316-17.  The SJC rejected James' arguments and affirmed his murder conviction.  Id. at 318.

On March 17, 1999, James filed a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  James v. Marshall, No. 1:99-cv-10728-RWZ (Docket #3).  James claimed that the videotaped confession used at trial was taken in violation of his Fifth Amendment right to remain silent, and that its admission as evidence at trial was error.  James v. Marshall, No. CIV.A. 99-10728-RWZ, 2002 WL 924241, at *1 (D. Mass. Mar. 12, 2002), aff'd, 322 F.3d 103 (1st Cir. 2003).  On, March 12, 2002, his petition was denied.  Id. at *2.  Following an appeal, the First

---

[1] At the time that James was convicted, section 2 of Massachusetts General Laws chapter 265 read, in relevant part: "Any . . . person who is guilty of murder in the first degree shall be punished by imprisonment in the state prison for life. . . .  No person shall be eligible for parole under section one hundred and thirty-three A of chapter one hundred and twenty-seven while he is serving a life sentence for murder in the first degree[.]"

Circuit affirmed the District Court's order on March 14, 2003. <u>James v. Marshall</u>, 322 F.3d 103, 104 (1st Cir. 2003).

On June 25, 2012, the United States Supreme Court decided in <u>Miller v. Alabama</u> that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition against "cruel and unusual punishments." <u>Miller v. Alabama</u>, 567 U.S. 460, 465 (2012). On June 6, 2013, James filed a motion for a new trial in the state court challenging the judgments against him under the federal constitution and in light of newly discovered juvenile brain science and United States Supreme Court precedent. (Docket #16-1 at 7, 49-50). The motion was bifurcated by the state court.[2] On December 24, 2013, the SJC determined in <u>Diatchenko v. District Attorney for the Suffolk District</u> that <u>Miller v. Alabama</u> had retroactive application to cases on collateral review. <u>Diatchenko v. District Attorney for the Suffolk Dist.</u>, 466 Mass. 655, 658 (2013). The SJC further held that sentences of life without parole, whether mandatory or discretionary, violate the prohibition against "cruel and unusual punishments" in Article 26 of the Massachusetts Declaration of Rights when imposed on individuals who are under the age of eighteen when they commit murder in the first degree. <u>Id.</u> at 658-59. The SJC held that the exception to parole eligibility in Massachusetts General Laws chapter 265, section 2 was invalid as applied to juvenile homicide offenders, but that the remaining provisions of the statute had independent force and could be given effect without the parole ineligibility provision.[3] <u>Id.</u>

---

[2] While there is no explicit record of the bifurcation, both parties agree that bifurcation took place. (<u>See</u> Docket #16 at 3; Docket #17 at 4).

[3] In 2014, section 2 of Massachusetts General Laws chapter 265 was amended and now explicitly states:

> Any person who is found guilty of murder in the first degree who committed the offense on or after the person's fourteenth birthday and before the person's eighteenth birthday shall be punished by imprisonment in the state prison for life and shall be eligible for parole after the term of years fixed by the court pursuant to section 24 of chapter 279.

On June 3, 2014, James supplemented his pending new trial motion with a request for a resentencing hearing to decide the constitutionality of his sentence in light of <u>Miller v. Alabama</u>. (Docket #16-1 at 8).  On August 13, 2014, the trial court denied James' motion for a resentencing hearing, holding that "[o]nce James's sentence is commuted to life with the possibility of parole per the holding of <u>Diatchenko</u>, the narrow holding of <u>Miller</u> requiring the consideration of mitigation evidence will no longer apply to him."  (<u>Id.</u> at 48).  On January 11, 2016, the trial court denied James' motion for a new trial in its entirety.  (<u>Id.</u> at 9).  James' sentence was modified to a sentence of life in prison, striking the ineligibility for parole, without a resentencing hearing or a specific docket entry.

On January 25, 2016, the United States Supreme Court decided <u>Montgomery v. Louisiana</u>, making <u>Miller</u> retroactive to cases on collateral review.  <u>Montgomery v. Louisiana</u>, 136 S. Ct. 718 (2016).  On February 9, 2016, James filed a petition for leave to appeal the denial of his motion for a new trial, pursuant to Mass. Gen. Laws ch. 278, § 33E.[4]  (<u>Id.</u> at 15).  The single justice reserved and reported one issue to the full court:  "whether the postconviction case of a defendant who was tried on an indictment for murder in the first degree and was convicted of murder in the first degree, but who was a juvenile at the time of the crime and thus subject to a lesser penalty than life without the possibility of parole, is a 'capital case' as defined in §33E."  <u>Commonwealth v. James</u>, 477 Mass. 549, 550 (2017).  In response, the SJC held that the gatekeeper provision of § 33E "applies to a juvenile defendant who, like James, has had a direct appeal, has received

---

Mass. Gen. Laws ch. 265, § 2(b).

[4] In a capital case, which is defined to include a case in which the defendant was indicted for, and convicted of, first degree murder, a defendant may not appeal a decision of the Superior Court denying his motion for post-conviction relief "unless the appeal is allowed by a single justice of the supreme judicial court on the ground that it presents a new and substantial question which ought to be determined by the full court.  See <u>Dickerson v. Attorney Gen.</u>, 396 Mass. 740, 742 (1986) (quoting Mass. Gen. Laws ch. 278, § 33E).  This is referred to as a gatekeeper provision.

plenary review and, following that review, remains convicted of murder in the first degree." <u>Id.</u> at 552. The case was remanded to the single justice to determine whether the issues presented in his new trial motion were "new and substantial" for purposes of § 33E. <u>Id.</u> On August 28, 2018, the single justice denied James' gatekeeper petition, determining that James had failed to raise a new and substantial issue justifying further review. (Docket #16-1 at 103-13).

James filed the instant petition for writ of habeas corpus on September 17, 2018.[5] (Docket #1). On December 31, 2018, Respondent filed the instant motion to dismiss. (Docket #15).

## II.   PETITIONER'S HABEAS CORPUS PETITION

James asserts fifteen grounds in his habeas corpus petition:

(1) the Massachusetts gatekeeper provision is an unfair roadblock that deprived James of post-<u>Miller</u> review, violating his Fifth, Sixth, Eighth, and Fourteenth Amendment rights;

(2) newly discovered juvenile brain science is material to the Commonwealth's burden, and, therefore, the state judgments and decisions violate James' Fifth, Sixth, Eighth, and Fourteenth Amendment rights;

(3) Based on <u>Miller</u> and new juvenile brain science, the jury instructions violated James' Fifth, Sixth, Eighth, and Fourteenth Amendment rights;

(4) James' trial attorney provided ineffective assistance of counsel;

(5) The mandatory nature of the two life sentence judgments, <u>i.e.</u> the original judgment and what James alleges post-<u>Miller</u> to be a new judgment, imposed upon James, without an individual sentencing hearing for juvenile defendants or an evidentiary hearing or consideration of <u>Miller</u> factors or any appeal to a full appellate court, is contrary to and an unreasonable application of Supreme Court precedent and violates James' Fifth, Sixth, Eighth, and Fourteenth Amendment rights;

(6) The state court's decision to deny an evidentiary hearing was contrary to and an unreasonable application of Supreme Court precedent and violated James' Fifth, Sixth, Eighth, and Fourteenth Amendment rights;

(7) In light of <u>Miller</u> and the new scientific evidence of the under-developed juvenile brain, a new trial is required because the statutory law at the time of James' 1995 trial – which automatically sent 17-year-old juveniles to adult Superior Court without any judicial mitigation review or a

---

[5] On November 27, 2018, James filed a petition for a writ of certiorari in the United States Supreme Court. That petition was denied on February 19, 2019.

juvenile transfer hearing – is unconstitutional as applied to 17-year-old juveniles, and violated James' Fifth, Sixth, Eighth, and Fourteenth Amendment rights;

(8) In light of <u>Miller</u> and pre-existing Supreme Court jury instruction precedent and the new scientific evidence of the under-developed juvenile brain, a new trial is required because a jury must determine whether James' adolescent brain formed the necessary intent for murder, yet the jury was not presented with evidence regarding James' juvenile mitigation and unreasonably was not instructed on James' juvenile mitigation issues as they related to the Commonwealth's burden of proof, in violation of James' 5th, 6th, 8th, and 14th Amendment rights;

(9) At the time of James' trial there was no way to present a juvenile mitigation defense based on the inadequate state of the law and science, such that a true and just verdict was never reached, in violation of James' 5th, 6th, 8th, and 14th Amendment rights, and the state court decisions are contrary to and an unreasonable application of Supreme Court precedent and based on an unreasonable determination of the facts;

(10) The Massachusetts murder statute used to indict, convict and sentence James is unconstitutional as applied to juveniles because, after striking the unconstitutional portions of the statute, the remaining statutory language is incapable of functioning independently and is therefore void for vagueness and violates James' Fifth, Sixth, and Fourteenth Amendment rights, and the state court decisions are contrary to and an unreasonable application of Supreme Court precedent and based on an unreasonable determination of the facts;

(11) Because evidence about James' mental disorders in DSM-V is both new and material to the verdict and contradicts the Commonwealth's trial expert witness on issues relevant to the degree of guilt, the trial without this evidence and the resulting conviction and sentences violated James' Fifth, Sixth, Eighth, and Fourteenth Amendment rights, and the state court decisions are contrary to and an unreasonable application of Supreme Court precedent and based on an unreasonable determination of the facts;

(12) The state court decision declining to hold that seventeen-year-old James had a right to consult in person with an interested and informed adult before any interrogation or waiver of rights (despite applying that right to other juvenile defendants), and holding that a juvenile's initial request not to speak to police does not need to be scrupulously honored, is contrary to and an unreasonable application of Supreme Court precedent, an unreasonable determination of facts, and violated James' Fifth, Sixth, Eight, and Fourteenth Amendment rights;

(13) The grand jury was not properly instructed on the law of mitigation, in violation of James' Fifth, Sixth, and Fourteenth Amendment rights, and the state court decisions are contrary to and an unreasonable application of Supreme Court precedent and based on an unreasonable determination of the facts;

(14) There was a substantive Sixth Amendment violation of James' right to a public trial, and because the state court decisions on waiver and the requirement to show prejudice on a structural error are contrary to and an unreasonable application of federal law in violation of James' Fifth, Sixth, and Fourteenth Amendment rights;

(15) The cumulative impact of all of the errors and the newly available evidence shows a clear violation of James' rights under the Fifth, Sixth, and Fourteenth Amendments, and the state court decisions are contrary to and an unreasonable application of Supreme Court precedent and based on an unreasonable determination of the facts.

(Docket #1).

III.   DISCUSSION

   A.   Whether the Petition is a Second or Successive Application

The habeas corpus application on review is the second one James has filed in federal court. Respondent asserts that the instant petition is therefore a "second or successive petition" subject to the gatekeeping provisions of 28 U.S.C. § 2244(b), as amended by AEDPA.  (Docket #16 at 5). That statue provides, in relevant part:

(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless –

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B) (i) the factual predicate of the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(3) (A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

28 U.S.C. § 2244(b).  Respondent argues that this court is without jurisdiction to entertain the instant petition because James failed to obtain leave from the First Circuit prior to its filing.

(Docket #16 at 7).  James concedes that his petition is second in time but asserts that it is not a "second or successive" petition requiring adherence to the gatekeeping provisions of section 2244(b).  (Docket #17 at 7).

Although Congress did not define the phrase "second or successive," "it is well settled that the phrase does not simply 'refer to all § 2254 applications filed second or successively in time.'" Magwood v. Patterson, 561 U.S. 320, 331-32 (2010) (quoting Panetti v. Quarterman, 551 U.S. 930, 944 (2007)) (alteration omitted).  In Magwood v. Patterson, the Court held that where "there is a new judgment intervening between the two habeas petitions, an application challenging the resulting new judgment is not 'second or successive' at all."  Id. at 341-42 (internal quotation omitted).  State law determines whether a state court action constitutes a new, intervening judgment.  Gonzalez v. Sherman, 873 F.3d 763, 769 (9th Cir. 2017).

It is well settled that "judgment in a criminal case means sentence.  The sentence is the judgment."  Burton v. Stewart, 549 U.S. 147, 156 (2007) (quoting Berman v. United States, 302 U.S. 211, 212 (1937)).  "As such, a change to a defendant's sentence is a change to his judgment." Gonzalez, 873 F.3d at 769.  The threshold question in this matter, therefore, is whether the striking of parole ineligibility from James' 1995 sentence was an intervening judgment under Magwood. If it was, the instant petition is not a second or successive petition and this court may adjudicate it without James first obtaining authorization from the First Circuit under section 2244(b).

When the Court determined in Montgomery that Miller had retroactive effect, it emphasized that the decision "does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole."  Montgomery, 136 S. Ct. at 736.  Instead, "[a] State may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them."  Id.  In support

of this remedy, the court further noted in <u>Montgomery</u> that "[e]xtending parole eligibility to juvenile offenders does not impose an onerous burden on the States, nor does it disturb the finality of state convictions."  <u>Id.</u> By the time the court decided <u>Montgomery</u>, the SJC had already approved this procedure in <u>Diatchenko</u>.

In <u>Diatchenko</u>, the SJC made clear that a juvenile sentenced to life imprisonment without the possibility of parole was "not entitled to be resentenced given that he was not improperly sentenced in the first instance, but was only denied the chance to be considered for parole." <u>Diatchenko</u>, 466 Mass. at 674.  The SJC held that the juvenile's "life sentence remains in full force and effect, but the statutory exception to parole eligibility no longer applies to him." <u>Id.</u> at 673. "The result was that any juvenile offender who had been convicted of murder in the first degree . . . became eligible for parole within sixty days before the expiration of fifteen years of his or her life sentence."  <u>Clay v. Massachusetts Parole Bd.</u>, 475 Mass. 133, 134 (2016).

Despite these precedents, James argues that he was resentenced and, under <u>Magwood</u>, the instant application is not "second or successive."  First, James points to the SJC's decision rejecting his gatekeeper petition as proof that his sentence was changed after he filed his earlier 1999 habeas petition.  (Docket #17 at 18).  In the decision, the SJC stated that James' motion for a new trial was denied but, because he was under the age of eighteen at the time of the killing, James "was resentenced to life with the possibility of parole."  <u>Commonwealth v. James</u>, 477 Mass. at 550. James understandably attaches great importance to the SJC's use of the term "resentenced." However, the technical meaning of that term was not at issue in that decision.  Indeed, the SJC used "resentenced" in the "Background" section of the decision.  Moreover, its use cannot be squared with the undisputed fact that post-<u>Miller</u>, James was not granted a new sentencing hearing or issued a new judgment.  Hence, I do not find the SJC's word choice dispositive.

Further, a review of the trial court's actual decision on the motion for a new trial to which the SJC referred is instructive.  In the motion for a new trial, James argued that he was entitled to a new trial because his sentence was unconstitutional under <u>Miller</u> and <u>Diatchenko</u>, and there was no constitutional vehicle for resentencing him without a new trial, as Massachusetts General Laws chapter 265, section 2 was void for vagueness once the mandatory sentence of life without the possibility of parole was excised.  (Docket #16-1 at 94).  The trial court disagreed, stating that the SJC had already concluded in <u>Diatchenko</u>, "that the invalid life sentence is severable from the remainder of the statute and the appropriate remedy for the constitutional violation is not re-sentencing, but rather, the striking from a juvenile's life sentence of the ineligibility for parole." (<u>Id.</u>).  Clearly, the trial court did not regard striking James' ineligibility for parole as a resentencing.  Given this record, the undersigned does not attach to the SJC's isolated use of the word "resentenced" the significance James seeks.

James' sentence at the time of his conviction in 1995 was life in prison.  Pursuant to <u>Diatchenko</u>, that life sentence remains in full force and effect.  <u>See</u> <u>Diatchenko</u>, 466 Mass. at 673.  Striking parole ineligibility from his sentence did not alter the 1995 judgment authorizing James' confinement for life in prison.  Thus, there was no intervening judgment between James' 1999 habeas petition and the instant petition.

James also argues that his petition is not successive because it raises issues that were not ripe at the time of his earlier petition, namely that juvenile brain science had not been adequately developed and the court had yet to decide <u>Miller</u>.  (Docket #17 at 20).  However, accepting <u>arguendo</u> James' argument that this claim was not ripe in 1999, section 2244(b)(3) requires James to move in the Court of Appeals for the First Circuit before applying for habeas relief in the district court.

10

In <u>Panetti v. Quarterman</u>, the United States Supreme Court concluded that a claim that was not ripe at the time the petitioner filed his first federal habeas petition would not be considered "second or successive" under section 2244(b) if the petitioner asserted the claim in a later habeas petition once it became ripe.  <u>Panetti v. Quarterman</u>, 551 U.S. 930, 947 (2007).  The Supreme Court noted that AEDPA's concern for finality was not implicated by this decision.  <u>Id.</u> at 946.  Lower courts have utilized the following framework to apply <u>Panetti</u>:

> [I]f the purported defect existed, or the claim was ripe, at the time of the prior petition, the later petition is likely to be held successive even if the legal basis for the attack was not.  If however, the purported defect did not arise, or the claim did not ripen, until after the conclusion of the previous petition, the later petition based on that defect may be non-successive.

<u>Leal Garcia v. Quarterman</u>, 573 F.3d 214, 222 (5th Cir. 2009), <u>quoted in</u> <u>Gautier v. Wall</u>, 620 F.3d 58, 61 n.1 (1st Cir. 2010).

Applying this framework, James' petition is successive.  A numerically second petition based, as is that of James, on newly discovered evidence or on a new rule of constitutional law must be considered "second or successive" as any other holding "would permit an end-run around section 2244['s]" requirement that such claims first be certified by the court of appeals, thereby rendering section 2244(b)(3) surplusage.  <u>See</u> <u>id.</u> at 221; <u>see also</u> <u>In re Phillips</u>, No. 17-3729, 2017 U.S. App. LEXIS 17766, at *8 (6th Cir. July 20, 2017) (utilizing this standard to hold that petition was "second or successive" where the purported factual defect, <u>i.e.</u> the petitioner's age at the time of the offense, remained unchanged from the time of the offense, although the caselaw concerning the appropriateness of sentencing with respect to certain classes of offenders had since developed from the time of his capital conviction).

11

B.  Whether the Petition Should be Transferred to the First Circuit

As James' current petition is "second or successive" under section 2244(b), he was required to obtain leave from the First Circuit prior to its filing.  See 28 U.S.C. § 2244(b)(3)(A).  Rather than dismiss the action, James contends that the petition should be transferred to the First Circuit as a timely application for leave to file a second and successive petition under 28 U.S.C. § 2244(b). (Docket #17 at 21).

"If a second or successive § 2254 . . . petition is filed in a district court without the requisite authorization by the court of appeals pursuant to 28 U.S.C. § 2244(b)(3), the district court will transfer the petition to the court of appeals pursuant to 28 U.S.C. § 1631 or dismiss the petition." First Circuit Rule 22.1(e); see Pratt v. United States, 129 F.3d 54, 57 (1st Cir. 1997) ("[A] district court, faced with an unapproved second or successive habeas petition, must either dismiss it or transfer it to the appropriate court of appeals.") (citations omitted).  Section 1631 provides that if a civil action is filed in a court and "that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed[.]" 28 U.S.C. § 1631.

Respondent asserts that the habeas petition is barred by the statute of limitations.  (Docket #16 at 16).  If this assertion is correct, it would bar this court from transferring the case to the First Circuit as "[i]t would not be 'in the interest of justice' under 28 U.S.C. § 1631 to transfer a case clearly barred by the statute of limitations."  See Abbott v. United States, 144 F.3d 1, 6 (1st Cir. 1998) (affirming dismissal, rather than transfer under section 1631 to Court of Federal Claims, because suit was barred by the Fair Labor Standards Act's two-year statute of limitations).

A one-year statute of limitation period applies to habeas corpus applications.  28 U.S.C.

§ 2244(d)(1).  This limitation period runs from the latest of:

> (A) The date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

James asserts that his limitation period should run from the date of the Court's decision in

Miller pursuant to both section 2244(d)(1)(C) and (D).  (Docket #17 at 22).  The Supreme Court

decided Miller on June 25, 2012.  James filed a motion for a new trial on June 6, 2013, just nineteen

days short of the one-year anniversary of the Miller decision.  (Docket #16-1 at 7).  On Monday,

September 17, 2018, twenty days after the motion for a new trial was denied, James filed the instant

habeas petition.  (Id. at 103-13; Docket #1).  To the extent that James correctly argues that the date

on which the limitations period began to run was the date of decision in Miller under either section

2244(d)(1)(C) or (D), his petition was filed within the limitations period, albeit with no time to

spare.  See 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State

post-conviction or other collateral review with respect to the pertinent judgment or claim is

pending shall not be counted toward any period of limitation under this subsection.").

Section 2244(d)(1)(C) provides that the statute of limitations begins to run from the date

on which a constitutional right was recognized by the Supreme Court, if the right asserted is "newly

recognized" and has been "made retroactively applicable to cases on collateral review." To invoke this provision, James must make a prima facie case that his specific claims in the instant petition rely on the actual new constitutional right recognized in Miller. See Moore v. United States, 871 F.3d 72, 80 (1st Cir. 2017); In re Harrell, No. 16-1048, 2016 WL 4708184, at *2 (6th Cir. Sept. 8, 2016) (denying authorization for a successive petition where petitioner argued that his sentence was the functional equivalent of a term of life without parole and therefore unconstitutional under Miller because petitioner "needs to make a prima facie case related to an actual constitutional rule that applies retroactively") (emphasis in original). The new constitutional right recognized in Miller was narrow – it protects juvenile offenders sentenced to mandatory life imprisonment from parole ineligibility. Miller, 567 U.S. at 479; see Davis v. McCollum, 798 F.3d 1317, 1321 (10th Cir. 2015) (categorizing the new right recognized in Miller as "narrowly drawn"). James already received the benefit of Miller's holding when the Superior Court administratively struck parole ineligibility from his 1995 sentence. See Montgomery, 136 S. Ct. at 736 (holding that "[a] State may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them."). Despite having his Miller violation remedied, James now asserts claims constructed from parts of the Miller decision, but beyond Miller's narrow holding. Thus, the undersigned finds that James' argument that his petition is timely pursuant to section 2244(d)(1)(C) is without merit. See Davis, 798 F.3d at 1322 (finding that, because petitioner's argument asserts an extension of Miller and not the new right actually recognized in Miller, the petition's untimeliness was not excused).

James also argues that his petition is timely pursuant to section 2244(d)(1)(D) as it relies on a factual predicate of the newly discovered juvenile brain science relied upon in Miller. (Docket #17 at 22). Under section 2244(d)(1)(D), the one-year limitation period runs from "the date on

14

which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  The First Circuit has interpreted the phrase "factual predicate" to mean "evidentiary facts or events, and not court rulings or legal consequences of the facts." Holmes v. Spencer, 685 F.3d 51, 59 (1st Cir. 2012) (quoting Brackett v. United States, 270 F.3d 60, 69 (1st Cir. 2001)) (alterations omitted).

In Miller, the Court recognized that the issue before it implicated two strands of precedent reflecting its concern with proportionate punishment – the first adopting categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty, and the second prohibiting mandatory imposition of capital punishment. Miller, 567 U.S. at 470.  The Court noted that several of the cases in the first strand "have specifically focused on juvenile offenders, because of their lesser culpability" citing to Roper v. Simmons, 543 U.S. 551 (2005), in which the Court held that the Eighth Amendment bars capital punishment for children, and Graham v. Florida, 560 U.S. 48 (2010), in which the Court concluded that the Eighth Amendment also prohibits a sentence of life without the possibility of parole for a child who committed a nonhomicide offense.  Id.  In Miller, the Court stated that these cases "establish that children are constitutionally different from adults for purposes of sentencing," noting that the cases relied on three significant gaps between juveniles and adults:

> First, children have a "lack of maturity and an underdeveloped sense of responsibility," leading to recklessness, impulsivity, and heedless risk taking. Roper, 543 U.S. at 569.  Second, children "are more vulnerable . . . to negative influences and outside pressures," including from their family and peers; they have limited "contro[l] over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings.  Id.  And third, a child's character is not as "well formed" as an adult's; his traits are "less fixed" and his actions less likely to be evidence of irretrievabl[e] deprav[ity].  Id. at 570.

Miller, 567 U.S. at 471 (alterations in original).  The Court stated that the decisions in Roper and Graham "rested not only on common sense – on what 'any parent knows' – but on science and

social science as well." Id.  The Court noted that it had cited studies in Roper "showing that 'only a relatively small proportion of adolescents' who engage in illegal activity "develop entrenched patterns of problem behavior,'" id. (quoting Roper, 543 U.S. at 570) (alterations omitted), and had recognized in Graham that "'developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds' – for example, in 'parts of the brain involved in behavior control.'"  Id. (quoting Graham, 560 U.S. at 68).  The Court stated that in Graham, "[w]e reasoned that those findings – of transient rashness, proclivity for risk, and inability to assess consequences – both lessened a child's 'moral culpability' and enhanced the prospect that, as the years go by and neurological development occurs, his 'deficiencies will be reformed.'" Id. (quoting Graham, 560 U.S. at 68).  In a footnote, the Court recognized that "the science and social science supporting Roper's and Graham's conclusions have become even stronger."  Id. at 472 n.5.  Finding that none of what Graham said about children's distinctive mental traits and environmental vulnerabilities was "crime-specific," the Court concluded that Graham's reasoning "implicates any life-without-parole sentence for a juvenile, even as its categorical bar relates only to nonhomicide offenses."  Id. at 473.

Although the Court did not decide Miller until 2012, some twelve years after James filed his first petition, the scientific evidence of the under-developed juvenile brain on which Miller relied was previously relied upon by the Court in both Roper and Graham, decided in 2005 and 2010 respectively.[6]  Therefore, James may not avail himself of the limitations period of section

---

[6] Indeed, this scholarship has been around as early as 1988.  In that year, a plurality of the Court decided in Thompson v. Oklahoma, 487 U.S. 815 (1988), that the Eighth and Fourteenth Amendments prohibited the execution of an offender under the age of sixteen at the time of the offense.  The Court endorsed the proposition that "less culpability should attach to a crime committed by a juvenile than to a comparable crime committed by an adult[,]" as "[i]nexperience, less education, and less intelligence make the teenager less able to evaluate the consequences of his or her conduct while at the same time he or she is much more apt to be motivated by mere emotion or peer pressure than is an adult."  Id. at 835.  Nor was this the first instance of the Court recognizing the special mitigating force of youth.  In his 1982 decision in Eddings v. Oklahoma, Justice Powell quoted the following passage from the 1978 Report of the Twentieth Century Fund Task Force on Sentencing Policy Toward Young Offenders:

2244(d)(1)(D).[7]  The fact that the Court recognized in a footnote in <u>Miller</u> that the science and social science supporting <u>Roper's</u> and <u>Graham's</u> conclusions have become even stronger, does not alter that result.[8]  Newly discovered information "that merely supports or strengthens a claim that could have been properly stated without the discovery . . . is not a 'factual predicate' for purposes of triggering the statute of limitations under [section] 2244(d)(1)(D)."  <u>Rivas v. Fischer</u>, 687 F.3d 514, 535 (2d Cir. 2012).  To hold otherwise would restart the limitations period anytime a relevant study was published, thereby stripping the limitations period of its purpose of bringing finality to criminal judgments.  <u>See</u> <u>Escamilla v. Jungwirth</u>, 426 F.3d 868, 871 (7th Cir. 2005) ("Section 2244(d)(1)(D) does not restart the time when corroborating evidence becomes available; if it did, then the statute of limitations would fail in its purpose to bring finality to criminal judgments, for

---

Adolescents, particularly in the early and middle teen years, are more vulnerable, more impulsive, and less self-disciplined than adults.  Crimes committed by youths may be just as harmful to victims as those committed by older persons, but they deserve less punishment because adolescents may have less capacity to control their conduct and to think in long-range terms than adults.

<u>Eddings v. Oklahoma</u>, 455 U.S. 104, 115 n.11 (1982), <u>quoted in</u> <u>Thompson</u>, 487 U.S. at 834.

[7] In his petition, James asserts that he is entitled to habeas relief based on newly available evidence in the DSM-V that contradicts the Commonwealth's trial expert witness on issues relevant to the degree of guilt.  (Docket #1 at 7).  James does not directly refer to the DSM-V in either his response to the instant motion or in his memorandum of law of September 17, 2018.  To the extent that James' argument could be construed as asserting that the statute of limitations ran from the publication of the DSM-V pursuant to section 2244(d)(1)(D), this argument would be unavailing as the DSM-V was released in May 2013.  <u>See</u> Am. Psychiatric Ass'n, DSM-5: Frequently Asked Questions, https://www.psychiatry.org/psychiatrists/practice/dsm/feedback-and-questions/frequently-asked-questions (last visited Sept. 27, 2019).

[8] That footnote reads:

The evidence presented to us in these cases indicates that the science and social science supporting <u>Roper's</u> and <u>Graham's</u> conclusions have become even stronger.  <u>See</u>, <u>e.g.</u>, Brief for American Psychological Association et al. as <u>Amici Curiae</u> 3 ("[A]n ever-growing body of research in developmental psychology and neuroscience continues to confirm and strengthen the Court's conclusions"); <u>Id.</u>, at 4 ("It is increasingly clear that adolescent brains are not yet fully mature in regions and systems related to higher-order executive functions such as impulse control, planning ahead, and risk avoidance"); Brief for J. Lawrence Aber <u>et al.</u> as <u>Amici Curiae</u> 12-28 (discussing post-<u>Graham</u> studies); <u>id.</u>, at 26-27 ("numerous studies post-<u>Graham</u> indicate that exposure to deviant peers leads to increased deviant behavior and is a consistent predictor of adolescent delinquency" (footnote omitted)).

<u>Miller</u>, 567 U.S. at 472 n.5.

17

any prisoner could reopen the judgment by locating any additional fact"), abrogated on other grounds by McQuiggin v. Perkins, 569 U.S. 383 (2013).

The only remaining basis to avoid the limitations bar is through the equitable tolling doctrine, see Holland v. Florida, 560 U.S. 631 (2010), or the miscarriage of justice exception based upon actual innocence, see McQuiggin.  Neither principle applies.

"Generally, the doctrine of equitable tolling enables a court to extend a statute of limitations for equitable reasons not acknowledged in the language of the statute itself."  Holmes, 685 F.3d at 61-62.  A petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  Holland, 560 U.S. at 649.  Equitable tolling of the section 2244(d)(1) limitations period is limited to "rare and extraordinary cases."  Trapp v. Spencer, 479 F.3d 53, 59 (1st Cir. 2007).  James, who bears the burden of establishing a basis for equitable tolling, see id., briefly asserts that the advances in juvenile brain science relied upon in Miller qualify as an extraordinary circumstance for tolling purposes.  (Docket #17 at 23).  However, as discussed above, the advances in juvenile brain science relied upon in Miller were previously relied upon in both Roper and Graham and even older Court precedents, and therefore did not prevent the filing of this motion.  Thus, the petition is not subject to equitable tolling.

"An actual innocence claim is 'a gateway through which a habeas petitioner may have his otherwise barred constitutional claim considered on the merits."  Barreto-Barreto v. United States, 551 F.3d 95, 102 (1st Cir. 2008) (quoting Schlup v. Delo, 513 U.S. 298, 315 (1995)) (alterations omitted).  It "applies to a severely confined category:  cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'"  McQuiggin, 569 U.S. at 395 (alterations omitted).  Here, James does not claim that he is factually innocent of

the acts with which he was charged; rather, he claims that the developments in scientific brain evidence demonstrate that, as a minor, he could not have formed the specific intent for the crime of murder in the first degree by reason of extreme atrocity or cruelty.[9] (Docket #17 at 27).  This claim of legal insufficiency, as opposed to factual innocence, cannot support a claim of actual innocence sufficient to overcome the untimeliness of his petition.  See Barreto-Barreto, 551 F.3d at 102 ("'actual innocence' requires the petitioner to show 'factual innocence, not mere legal insufficiency'") (quoting Bousley v. United States, 523 U.S. 614, 623 (1998)); Woodward v. Delbalso, No. 17-224, 2017 U.S. Dist. LEXIS 207478, at *12 (E.D. Pa. Dec. 14, 2017) (holding that petitioner's claim that developments in scientific brain evidence discussed in Miller demonstrate that, as a twenty-year old, he could not have formed the specific intent for the crime of first degree murder was a claim of legal sufficiency as opposed to factual innocence and could not support a claim of actual innocence sufficient to overcome the untimeliness of his petition).

Because I find that the instant petition is barred by the applicable statute of limitations and no exception to the limitations period applies, I recommend that the petition be dismissed rather than transferred to the First Circuit as such a transfer would not be in the interest of justice.

[9] While James does not make any argument that his actual innocence excepts his case from the limitations bar, the undersigned will address this argument in the interest of completeness.

IV.     CONCLUSION

For the foregoing reasons, I hereby RECOMMEND that the motion to dismiss (Docket #15) be ALLOWED.[10]


/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge

---

[10] The parties are notified that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of service of this Report and Recommendation.  The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See FED. R. CIV. P. 72(b)(2).  The United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See, e.g., United States v. Diaz-Rosado, 857 F.3d 89, 94 (1st Cir. 2017); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).